IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division



| | |
|---|---|
| **BRANDON LEE CAUDLE, #20711-058** | * |
| Petitioner, | * |
| v. | *     Case No.: GJH-17-955 |
| **TIMOTHY S. STEWART, WARDEN** | * |
| Respondent. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

While confined at the Federal Correctional Institution ("FCI") in Cumberland, Maryland, Brandon Lee Caudle, a U.S. Bureau of Prisons ("BOP") inmate, filed a self-represented 28 U.S.C. § 2241 Petition challenging his April 2014 disciplinary report, which was issued while he was incarcerated at the Federal Correctional Institution in Elkton, Ohio.[1] In the April 2014 report, he was charged with a Code violation for "Use of the Telephone for Abuses Other Than Criminal Activity" and, after his Disciplinary Hearing Officer ("DHO") hearing, he was found guilty and sanctioned to 360 days disciplinary segregation, with 300 days suspended, 180 days loss of commissary, 180 days impounding personal property, and the loss of 40 days of good conduct time ("GCT"). ECF No. 1.

Caudle contends that his due process rights were violated when (1) DHO Montgomery failed to notify Caudle that he was increasing the severity of the incident report from a Code 297 to a Code 197; (2) Staff Representative D. Smith failed to object to: (a) the increase of the severity of the incident report, (b) DHO Montgomery's failure to consider evidence presented,

---

[1] Caudle is now confined at the Federal Correctional Institution in Butner, North Carolina. ECF No. 11.

and DHO Montgomery's failure to allow Caudle to present testimony from his father as a witness; and (3) DHO Bittenbender: (a) failed to conduct a full rehearing on the incident report, (b) did not allow Caudle to have a staff representative, (c) failed to allow Caudle to present evidence in his defense; (d) failed to permit Caudle to call his father as a witness, and (d) amended the DHO report on January 7, 2015, without giving him a copy. ECF No. 1.

Presently pending before the Court is Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Respondent on June 1, 2017. ECF No. 4. The Motion has been fully briefed and is ready for disposition; a hearing is unnecessary. *See* Local Rule. 105.6 (D. Md. 2016). For reasons set forth below, Respondent's Motion, construed as a Motion for Summary Judgment, is granted.

## I. BACKGROUND

Caudle is currently serving an 89-month sentence following his December 2013 convictions for mail fraud and aggravated identity theft in the United States District Court for the Eastern District of Virginia. ECF No. 4-2 at 3; *see also United States v. Caudle*, Criminal No. HEH-13-0154 (E.D. Va.). On March 31, 2014, FCI Elkton mailroom staff received a package addressed to Caudle which appeared suspicious because the postal tag did not match the return address. *Id.* The return address was "Parker Publications" in New York, New York, and had an incomplete zip code of "1001." The postal tag showed that the package was shipped from zip code 28027 in North Carolina. Inside the package was a hardcover book entitled "The Jersey Sting." *Id.*

Additional investigation by FCI Elkton staff revealed that Caudle's father lives in North Carolina. *Id.* Respondent maintains that telephone calls between Caudle and his father were monitored and on March 25, 2014, approximately six days before the package arrived, Caudle

2

was overheard asking his father to send him a copy of "The Jersey Sting." *Id.* His father complained about the cost of sending books and Caudle instructed his father to send the book by "media mail" because it was cheaper, but to make sure it was from a publisher. *Id.* at 3–4, 14.

On April 10, 2014, Caudle received an incident report charging him with violating Disciplinary Code 297, "Use of the Telephone for Abuses Other Than Criminal Activity." *Id.* at 4, 14. On April 17, 2014, a Unit Discipline Committee ("UDC") reviewed the incident report and due to the severity of the incident, referred the incident report to the DHO. *Id.* Caudle received a copy of his rights and requested Counselor D. Smith as a staff representative, but declined to request any witnesses. *Id.* at 4, 18–20.

On April 21, 2014, Caudle was informed that DHO Timothy Montgomery, the DHO at FCI Elkton, was considering a higher offense of a Code 197 violation, "Use of a Telephone to further Criminal Activity (Attempted)," instead of a Code 297 violation, and that Caudle would have at least 24 hours before the hearing to prepare his case. *Id.* at 4, 14–16.

The hearing before DHO Montgomery occurred on April 23, 2014. *Id.* at 4. Caudle appeared with a staff representative. Montgomery found that Caudle had committed the prohibited act of a Code 197 violation and sanctioned him to the loss of 40 days good conduct time ("GCT"), 360 days of disciplinary segregation (300 days suspended pending 180 days of clear conduct), 180 days loss of commissary privileges, and the impounding of personal property for 180 days. *Id.* at 4, 22–25.

Caudle appealed the decision to the BOP Regional Office, which, on November 7, 2014, remanded the case for further review of the level of severity of the offense and for rehearing. *Id.* at 5; *see also* ECF No. 1-5. Caudle transferred from FCI Elkton to FCI Allenwood on November 10, 2014. Bittenbender, the DHO at Allenwood, conducted the rehearing on December 4, 2014.

3

*Id.* Caudle was verbally advised of his rights, including his right to a staff representative and witnesses, but did not request either. *Id.* Bittenbender denies telling Caudle that no rehearing was necessary or that neither a staff representative nor witnesses were necessary. *Id.* Caudle was given and took advantage of the opportunity to present evidence at the DHO rehearing that he believed was exculpatory. *Id.* at 35.

DHO Bittenbender took information from Caudle's original hearing and "imported it into a new form, noting his amendments in bold type." *Id.* at 5. Bittenbender reviewed all the evidence anew, including photographs showing that a package containing the book "The Jersey Sting" was sent to Caudle from North Carolina, but bearing a false New York return address. *Id.* at 6. Bittenbender examined the description of the telephone call between Caudle and his father, who resides in North Carolina where the package originated, asking him to send "The Jersey Sting" by media mail. He additionally considered that prison staff had conducted an internet search for the name of the publisher with the return address on the package, but no such publisher existed. *Id.* Bittenbender considered Caudle's exculpatory documentation, specifically a Wells Fargo Account Activity Log listing an Amazon purchase of $27.69, but which contained no descriptive information of the item purchased. The DHO found that based upon the greater weight of evidence, Caudle committed a lower level offense of a Code 331 violation, the "Attempted Introduction of Non-Hazardous Contraband," for having a hard back book delivered into the institution through his father when hardback books are only allowed into the institution directly from publishers. *Id.* In light of the reduced offense, Bittenbender disallowed 13 days of GCT and credited Caudle back the 27 days that had been disallowed by the original DHO. All other sanctions (disciplinary segregation time, loss of commissary time, and the impounding of property) remained the same. *Id.* at 6, 22–25.

4

On January 7, 2015, Bittenbender amended the DHO report to clarify the sanctions section to note that Caudle had already served 60 days of his disciplinary segregation sentence. *Id.* at 7, 39–41. None of the DHO findings and sanctions entered in the previous December 4, 2014 decision were changed. Bittenbender affirms that to the best of his recollection, Caudle was provided a copy of the amended report. *Id.* at 7.

Caudle appealed his December 4, 2014 DHO rehearing decision to the Regional and Central Office levels of the BOP. Both appeals were denied. *Id.*; *see also* ECF No. 1-9. Caudle subsequently filed this action. On June 2, 2017, Respondent filed the now-pending Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 4.

In his Response, Caudle argues that his disciplinary conviction should be expunged. ECF No. 6 at 1. He states that DHO Bittenbender verbally informed him that he was expunging the Code 296 incident report and reducing the Code 197 violation to a Code 331 violation and refused Caudle's request for a full rehearing. *Id.* at 4. Caudle again claims that his due process rights were violated, arguing that he was not given notice of the disciplinary hearing before the DHO. *Id.* He contends that DHO Bittenbender simply copied and pasted DHO Montgomery's report, except for changing a few select minor details in the sanctions section. Caudle maintains that his rehearing was brief and held outside a lieutenant's office in front of a guard shack. *Id.* at 4–5. In his Response, he asserts for the first time that he was found guilty of the charged offense *prior to* the initial DHO hearing before Montgomery. ECF No. 6 at 6.

In his Reply, Respondent argues that as Caudle's initial DHO hearing decision was remanded and a rehearing was conducted, his claims are moot or without merit. ECF No. 9. He argues that Caudle received all the procedural due process to which he was entitled and that Caudle has failed to show that the length and location of the rehearing violated his due process

5

rights. Respondent also maintains that there was sufficient evidence to support the DHO's determination of guilt. ECF No. 9.[2]

## II. STANDARD OF REVIEW

Respondent's motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 4. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*; see also *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322-23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[2] Caudle has also filed a "Supplemental Traverse to Government Motion to Dismiss or for Summary Judgment." ECF No. 13. In it, he refutes the points made by Respondent in his Reply, and claims that the testimony of his father was necessary.

6

(1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

The issue before the Court is whether Caudle received due process during his disciplinary hearing. Respondent asserts that Caudle's Petition should be dismissed because he was afforded due process at the DHO rehearing and because the DHO's findings were based on "some evidence." ECF No. 9 at 7. For the reasons set forth below, the Court finds that there is no basis to overturn the DHO's findings because the hearings met basic due process requirements.

In prison disciplinary proceedings where an inmate faces the possible loss of diminution or good time credits, the inmate is entitled to certain due process protections, including: (1) advance written notice of the alleged violation; (2) a hearing at which the inmate is afforded the right to call witnesses and present evidence, so long as doing so is not "unduly hazardous to institutional safety or correctional goals"; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (4) an impartial decision maker who has provided a written statement of the evidence relied upon and the reasons for any disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974). There is no constitutional right to confront and cross-examine witnesses or to have retained or appointed counsel at a prison disciplinary hearing. *See Baxter v. Palmigiano*, 425 U.S. 308, 322

7

(1976); *Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004). As long as the process meets these requirements and the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Wolff*, 418 U.S. at 563.

Caudle's DHO Hearing met the due process requirements set forth in *Wolff*. First, he was given written notice of the charges on the day the Reporting Officer prepared the Incident Report and before the DHO Hearings. ECF No. 4-2 at 18–20. Second, Caudle was informed of his right to call witnesses and of his right to have a staff representative; he proceeded with a staff representative. *Id*. Third, the DHO provided written statements of the evidence he relied upon and the reasons for disciplinary actions, which Caudle received. *Id*. at 22–41.

In addition, due process requires that "some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Corr. Inst. Walpole v. Hill*, 472 U.S. 445, 455 (1985). This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id*. (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)). For example, in *Hill*, the Supreme Court found that a prison disciplinary board met due process requirements when it revoked inmates' good time credits based on an officer's indirect observation that they had assaulted another inmate. *See Hill*, 472 U.S. at 447-48, 456-57. There, the officer heard an inmate twice say loudly, "What's going on," saw an inmate bleeding from the mouth and suffering a swollen eye, and saw the charged inmates jogging away from the scene. *Id*. at 447-8. Even though there was no direct evidence that any one of the charged inmates had committed the assault, the Court concluded that the "meager" evidence was nevertheless sufficient to meet the due process requirement. *Id*. at 457.

Here, DHO Bittenbender relied on the incident report and investigation in concluding that Caudle violated a code prohibiting receipt of a hard copy book that did not come directly from the publisher. Specifically, he relied on a recorded telephone conversation between Caudle and his father, photographs depicting the package intercepted by FCI Elkton mailroom staff addressed to Caudle, with a fraudulent return address, that contained a hardcover reading book entitled "The Jersey Sting," and a "non-descriptive" Wells Fargo Account Activity purchase listing in the amount of $27.69 submitted by Caudle. *See* ECF No. 4-2 at 39–41. Because there was "some evidence" to support the DHO's decisions, due process was afforded to Caudle. *See Hill*, 472 U.S. at 455–57. Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). As such, Respondent's Motion is granted.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2254, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). The court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although Caudle is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his ... part." *Miller-El*, 537 U.S. at 338.

9

Reasonable jurists would not find the Court's determination that Caudle is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, Respondent's Motion for Summary Judgment is granted, and the Petition for habeas corpus relief shall be denied. A separate Order shall issue.

Dated: March, 16, 2018

GEORGE J. HAZEL
United States District Judge